UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT LONDON

**CIVIL ACTION NO. 15-30-DLB**

**JESSE R. REDMOND, JR.,**
**a/k/a JESSE R. REDMOND,[1]**                                                                          **PETITIONER**


**v.**              **MEMORANDUM OPINION AND ORDER**


**J. C. HOLLAND, WARDEN,**                                                                                **RESPONDENT**

\*\*\*\*   \*\*\*\*   \*\*\*\*   \*\*\*\*

Petitioner Jesse R. Redmond, Jr., a/k/a Jesse R. Redmond, is an inmate confined by the BOP in the United States Penitentiary ("USP")-McCreary, located in Pine Knot, Kentucky. Redmond has filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging the evidence upon which a Disciplinary Hearing Officer ("DHO") at another prison relied upon in finding him guilty of stealing various items in late October, 2012. *See* 2241 Petition, R. 1; Amended § 2241 Petition, R. 9.[2] In this proceeding,

---

[1] The Bureau of Prisons ("BOP") identifies Redmond, BOP Register No. 08558-007, as "Jesse R. Redmond," not as "Jess R. Redmond, Jr." See http://www.bop.gov/inmateloc/ (last visited on June 23, 2015). Accordingly, the Clerk of the Court will be instructed to list "Jesse R. Redmond" as an alias designation on the CM/ECF cover sheet. Further, Redmond has named Charles Samuels, the Director of the BOP, as the respondent. The only proper respondent to a petition for a writ of habeas corpus is the individual having immediate custody of the person detained, typically the warden of the facility where the petitioner is confined. 28 U.S.C. §2243; *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004). As the current warden of USP-McCreary is J. C. Holland, the Clerk of the Court will be instructed to terminate Charles Samuels and to substitute J. C. Holland as the proper respondent to this proceeding.

[2] Redmond originally filed his § 2241 petition on October 7, 2013, in the United States District Court for the District of Columbia. *Redmond v. Samuels*, No. 13-01781 (TFH) (D. D. C. 2014). On February 5, 2015, that court transferred Redmond's § 2241 petition to this district, based on venue considerations and the fact that Redmond is confined in a prison located in this district. [R. 5] The transfer was not effectuated until February 26, 2015. [R. 7]

Redmond seeks an order setting aside his disciplinary conviction.

In conducting an initial review of habeas petitions under 28 U.S.C. § 2243, the Court must deny the relief sought "if it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief." Rule 4 of the Rules Governing § 2254 Cases in the United States District Courts (applicable to § 2241 petitions pursuant to Rule 1(b)). Because Redmond is not represented by an attorney, the Court evaluates his petition under a more lenient standard. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Burton v. Jones*, 321 F.3d 569, 573 (6th Cir. 2003). Thus, at this stage of the proceedings, the Court accepts as true Redmond's factual allegations and liberally construes his legal claims in his favor. As explained below, however, Redmond's habeas petition will be denied because he has not alleged facts supporting his assertion that his disciplinary conviction should be set aside.

## I. BACKGROUND

On October 31, 2012, Redmond was confined in the USP-Lewisburg, located in Lewisburg, Pennsylvania. On that date, at 9:30p.m., "C." Lytle, a USP-McCreary Correctional Officer, was conducting a random inspection of Cell 119, which Redmond occupied. When Officer Lytle opened Redmond's cell, he discovered a honey bottle half-filled with hand sanitizer made of 62% ethyl alcohol; four plastic bags, two filled with uncooked rice, one filled with uncooked grits, and one filled with brown sugar; 16 alcohol prep pads saturated with 70% isopropyl alcohol; and an identification card belonging to another USP-McCreary inmate. Officer Lytle issued an Incident Report charging Redmond with: (1) possession of narcotics, marijuana, drugs, alcohol, and intoxicants not prescribed by the medical staff, in violation of BOP Prohibited Acts Code ("PAC") 113; (2) introduction

or making of narcotics, marijuana, drugs, alcohol, and intoxicants not prescribed by the medical staff, in violation of PAC 111; (3) stealing, in violation of PAC 219; (4) possession of stolen property, in violation of PAC 226; and (5) possession of anything not authorized or retention by receipt of an inmate, in violation of PAC 305. [R. 1, p. 15, § 9] Officer Lytle concluded that Redmond had stolen these items because he was at that time employed as a hospital orderly at the prison. [*Id.*, § 11] Based on the photographic evidence and Officer Lytle's report, the Unit Disciplinary Committee at USP-Lewisburg referred the charges to the DHO for further disposition. [*Id.*, §§ 18-20]

The case proceeded to a hearing before the DHO. Redmond did not attach a copy of the DHO's Report, but even so, the administrative remedy documentation which he did provide explains what transpired at the disciplinary hearing and thereafter, during the administrative remedy process. J. L. Norwood, the Director of the BOP's Northeast Regional Office ("NERO"), states in his (or her) March 6, 2013 administrative remedy response that the DHO issued his Report on the disciplinary hearing on December 17, 2012; that the DHO found Redmond guilty of possessing stolen property in violation of PAC 226; and that the DHO imposed the following sanctions on Redmond: 30 days' confinement in disciplinary segregation; 90 days' loss of commissary and visiting privileges; and 90 days' loss of telephone privileges. [R. 1, p. 14][3]

---

3) Norwood stated that Redmond's 90-day telephone restriction privilege was suspended pending clear conduct. [R. 1, p. 14] Further, on January 29, 2013, the Warden of USP-Lewisburg submitted a request to the BOP, asking that Redmond be transferred from USP-Lewisburg to "any High security level institution," based on Redmond's December 17, 2012, disciplinary conviction and his "poor institutional conduct" which jeopardized "…the security and good order of the institution." [Id., p. 17, § 3] Redmond was transferred to USP-McCreary, although the date on which he was transferred to that facility is not known.

Redmond then appealed the DHO's Report to the NERO, asserting that the conviction was not supported by the evidence because no one had complained that the items found in his locker had been stolen. Norwood denied Redmond's BP-10 appeal, stating as follows:

> The DHO reasonably determined you committed the prohibited act based on the following. On October 31, 2012, a search of your cell revealed numerous food and medical items in your locked locker. The items were not issued to you through regular channels. As such, staff reasonably concluded they were stolen. Although you were not observed stealing the items, you were found in possession of them, a fact you admitted.
> The record in this case reflects substantial compliance with Program Statement 5270.09, Inmate Discipline. The decision of the DHO was based on the greater weight of the evidence, and the sanctions imposed were consistent with the severity level of the prohibited act….Accordingly, your appeal is denied.

[R. 1, p. 14]

Redmond then filed a BP-11 appeal with the BOP's Central Office, arguing therein that the DHO had insufficient evidence upon which to base his finding of guilt, and that the DHO failed or refused to consider other factual scenarios or possibilities which might have led to the presence of the items discovered in his cell on October 31, 2012. [*Id.*, pp. 11-13]

On August 2, 2013, the BOP's Office of Information Policy issued a letter acknowledging Redmond's appeal, assigning a case number to it, and advising Redmond that it would address his appeal in the order it was received. [*Id.*, p. 10] Redmond states that the BOP Central Office has not responded to his final administrative appeal. [*Id.*, p. 4] Thus, by operation of regulation, the Central Office has denied Redmond's BP-11 appeal. If an inmate does not receive a response within the time allotted, he may consider the absence of a response to be a denial at that level. 28 C.F.R. § 542.18.

4

## II.  CLAIMS ASSERTED IN REDMOND'S § 2241 PETITION

Redmond reiterates the argument which he asserted in his administrative appeal, *i.e.*, that the evidence upon which the DHO relied in finding him guilty of the PAC 226 violation was insufficient.  Redmond contends that the disciplinary conviction violated his right to due process of law in violation of the Fifth Amendment of the U.S. Constitution.

Redmond asserts that he was denied due process of law during his disciplinary hearing because the DHO accepted as true the facts as alleged in the Incident Report and failed to consider other circumstances which could have led to the discovery of the various items in his locker.  Redmond provides little (if any) information in support of his broad challenge to the sufficiency of the evidence upon which his disciplinary conviction was based.  He states only, "The disciplinary infraction report completely rested upon uncorroborated evidence and has no other indications that the petitioner stealing the items from the hospital, or possessing the stolen property."   [R. 1, p. 7]

Redmond has also filed a motion to amend his § 2241 petition [R. 9]. In that motion, he states:

> The petitioner sought a [sic] informal resolution seeking a review of the electronic surveillance cameras while the petitioner in administrative segregation unit prison official's had failed to timely respond to the petitioner [sic] informal resolution.

[*Id.,* pp. 1-2]

Redmond's reference to "electronic surveillance" in the context of his § 2241 petition is difficult to follow.  The only discernible connection to, or explanation of, the "electronic surveillance" issue that can be found in Redmond's filings consists of a one-page document attached to his § 2241 petition, in which Redmond discusses his version of the events of

October 31, 2012.  [R. 1, p. 16]

Redmond states that on October 31, 2012, he had been subjected to two successive "shakedowns" at USP-Lewisburg, and that during the second "shakedown," prison officials confiscated a toilet seat cover (which Redmond used for hygiene purposes) as well as some card board boxes, and that he had been called to the Lieutenant's office to explain about the toilet seat cover being found in the trash.  [*Id.*]  Redmond states, "A review of the cameras will show my movements after leaving the Lieutenant's office, and at not [sic] time did I go in the trash or come in contact with anyone, in the hall or in block, who could even be able to do such a thing."  [*Id.*]  Redmond further alleges that he was "…just trying to figure out if there was some policy that governed me getting two shakedowns in one night." *Id.*

### III.  DISCUSSION

The due process to which prisoners are entitled during the prison disciplinary process is set forth in 28 C.F.R. § 541.8 and in *Wolff v. McDonnell*, 418 U.S. 539 (1974). In *Wolff*, the United States Supreme Court explained that when a prison disciplinary hearing may result in the loss of good conduct time credits ("GTC"), due process requires that the inmate receive: 1) written notice of the charges at least 24 hours in advance of the disciplinary hearing; 2) a written statement by the fact finder as to the evidence relied on and reasons for the disciplinary action; 3) an opportunity to call witnesses and present documentary evidence in his or her defense when doing so would not be unduly hazardous to institutional safety or correctional goals; and 4) the assistance of staff or a competent inmate when the inmate is illiterate or when the issues are complex.  418 U.S. at 564-570.

Redmond has alleged no facts indicating that USP-Lewisburg officials failed to comply with the notice requirements set forth in *Wolff*. It appears from the Incident Report that Redmond did in fact receive proper notice of the charges filed against him. Further, the sanctions imposed on Redmond consisted of only 30 days' confinement in disciplinary segregation; 90 days' loss of commissary and visiting privileges; and 90 days' loss of telephone privileges (the latter subject to suspension pending clear conduct). Redmond alleges no facts indicating that was ordered to forfeit any GTC. Thus, the length of Redmond's federal sentence was not adversely impacted, which means that his § 2241 petition, as amended, can succeed only if he can establish that he had a liberty interest in remaining free from disciplinary segregation and the temporary revocation of visiting, commissary, and telephone privileges.

To determine whether a liberty interest is implicated in a prison setting, the interest must be limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995). The law is well established that prisoners have no protected liberty interest in remaining free of disciplinary confinement. *Id.* at 485-86; *Lee v. Young*, 43 F. App'x 788 (6th Cir. 2002); *Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir. 1997). Further, Redmond was ordered to serve only 30 days in disciplinary confinement, and the Supreme Court has expressly ruled that a 30-day placement in disciplinary segregation does not run afoul of the U.S. Constitution, particularly where a prisoner, such as Redmond, is serving a life sentence. *Sandin*, 515 U.S. at 486; *see also Hall v. Fuqua*, No. 10-13350, 2010 WL 3768345 at *2 (E.D. Mich. Sept.21, 2010) (finding that 30 days of detention in segregation and loss of privileges were not "atypical and significant

hardship[s]" on the prisoner).

Likewise, the temporary restriction on Redmond's visiting privileges was not unreasonable because prison inmates have no constitutional right to visitation. *See Bazzetta v. McGinnis*, 124 F.3d 774, 779 (6th Cir. 1997). The temporary restriction on Redmond's commissary privileges also did not qualify as a constitutional deprivation, as such a sanction is not considered to be an unusual or atypical condition of confinement. *See Davis v. Zuercher*, No. 7:08-CV-207-KKC, 2009 WL 585807, at *6 (E. D. Ky. Mar. 6, 2009) ("The other sanctions which were imposed (temporary loss of phone, visitation and commissary privileges) also fail to give rise to an actionable challenge under the Fifth Amendment. The law is well established that the temporary loss of privileges does not constitute a loss of a liberty interest in which prisoners have vested rights."); *Higgason v. Farley*, 83 F.3d 807, 809 (7th Cir. 1996) (denial of access to privileges such as social and rehabilitative activities did not constitute an atypical and significant hardship); *Frazier v. Coughlin*, 81 F.3d 313, 317 (2d Cir. 1996) (loss of commissary, recreation, package, and telephone privileges were not an atypical and significant hardship). Finally, the temporary suspension of a prisoner's telephone privileges does not implicate a protected liberty interest. *See Halcrombe v. Sniezek*, No. 4:07-CV-779, 2007 WL 1875678, at *4 (N.D. Ohio June 27, 2007); *Johnson v. Vroman*, No. 1:06-CV-145, 2006 WL 1050497, at *2 (W.D. Mich. April 19, 2006).

Because none of the identified sanctions imposed on Redmond caused him to serve a longer federal sentence or suffer an atypical hardship in relation to ordinary prison life, he has not set forth grounds entitling him to relief from his disciplinary conviction. *See, e.g., Boriboune v. Litscher*, 91 F. App'x 498, 500 (7th Cir. 2003) (finding that the prisoner's

short-term loss of telephone privileges and disciplinary segregation implicated no liberty interest and triggered no due process protection); *Jessiah v. Holland*, No. 12-CV-144-GFVT, 2013 WL 460624, at *1 (E.D. Ky. Feb. 6, 2013) (denying prisoner's § 2241 petition where his disciplinary sanctions consisted only of the loss of his prison job and temporary telephone privileges, not the loss of GTC).

Even assuming that Redmond had sustained the loss of GTC, his due process claim–that the DHO failed to consider and accept other versions of the events of October 31, 2012–fails because a finding of guilt in a disciplinary proceeding need only be "'supported by some evidence in the record.'" *Edwards v. Balisok*, 520 U.S. 641, 648 (1997) (quoting *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985)). The "some evidence" standard is a lenient one, requiring only "a modicum of evidence," and is met if the record contains any evidence that could support the [DHO's] decision. *Hill*, 472 U.S. at 455-56.

Here, "some evidence" supported the DHO's finding that Redmond was guilty of the PAC 226 violation, and that evidence consisted of the allegations and charges set forth in the Incident Report.[4] As NERO Director Norwood explained during the administrative remedy process, the DHO was free to fully accept as true Officer Lytle's observations on October 31, 2012, as well as his assessment that Redmond, a prison hospital employee with access to medical supplies, had stolen the items discovered in his locker. The Incident Report, standing alone, constituted "some evidence" in support of the DHO's conclusion that Redmond was guilty of the PAC 226 violation. A district court's role is not to re-try a

---

4) As noted, the Incident Report charged Redmond with having committed several disciplinary offenses, but the DHO convicted Redmond of just one infraction, the PAC 226 violation.

9

prison disciplinary hearing, weigh the evidence, or independently assess witness credibility. *Hill*, 472 U.S. at 455. Federal courts will not review the accuracy of a disciplinary committee's finding of fact. *Kelly v. Cooper*, 502 F. Supp. 1371, 1376 (E. D. Va. 1980).

Redmond contends that the DHO erred by rejecting another version (or versions) of the events of October 31, 2012, but a DHO need not accept what the inmate perceives to be the "best" or most convincing or persuasive set of facts. *See Sarmiento v. Hemingway*, 93 F. App'x 65, 68 (6th Cir. 2004) (affirming the DHO's determination that the greater weight of the evidence supported his decision finding Sarmiento guilty of "tampering with a security device" in violation of PAC 208, even where the facts were in dispute); *Johnson v. Patton*, No. 06-CV-HRW, 2006 WL 950187, at *5 (E.D. Ky. April 12, 2006) ("While these facts are not one hundred percent conclusive of whether the petitioner violated Code 108, they are adequate facts upon which to base a prison disciplinary conviction. They constitute "some" facts upon which the DHO was entitled to rely in finding the petitioner guilty of violating Code No. 108.")

Next, to the extent that Redmond may be claiming in his motion to amend [R. 9] that the BOP ignored its own procedures and policies by failing to view or consider videotape of the events of October 31, 2012, he states no grounds entitling him to relief. First, Redmond's description of the events on that date, set forth on page 16 of his § 2241 petition, appears to relate solely to the confiscation of a toilet seat cover and his complaints about successive shakedowns. His discussion does not explain how reviewing the video surveillance tape of those alleged events would have assisted him with respect to the charges set forth in the Incident Report.

10

Second, the requirements of procedural due process are defined by the United States Constitution, not by an agency's internal regulations or guidelines. *Sandin*, 515 U.S. at 485. Thus, an agency's alleged failure to adhere to its own policies does not state a due process claim. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541, (1985); *Smith v. City of Salem, Ohio*, 378 F.3d 566, 578 (6th Cir. 2004); *Slater v. Holland*, No. 0:11-CV-86-HRW, 2012 WL 1655985, at *5 (E.D. Ky. May 10, 2012).

Third and finally, a prisoner's claim that a DHO failed to view a video tape, or that he did not do so at the point in time requested by a prisoner, simply does not rise to the level of a due process violation. Courts in the Eastern District of Kentucky have held that "the DHO decision not to review video tape evidence does not constitute a denial of due process under *Hill* and *Wolff*." *Harvey v. Wilson*, No. 6:10-CV-235-GFVT, 2011 WL 1740141, at *10 (E.D. Ky. May 5, 2011) (collecting cases); *Davis*, 2009 WL 585807, at *7-8 (finding federal inmate's claim that he or his representative should have been allowed to view videotape of events leading to the incident report lacked merit; disciplinary proceeding complied with requirements established in *Wolff*); *see also McKeithan v. Beard*, 322 F. App'x 194, 201 (3d Cir. 2009) ("[T]he videotape and photographs at most constitute potentially exculpatory evidence, which prison officials have no constitutional obligation to preserve or consider."). Thus, the DHO's construed refusal to consider or view a video tape prior to, or during, the disciplinary hearing does not provide a basis for setting aside Redmond's disciplinary conviction.

Redmond's motion to amend his § 2241 petition [R. 9] will be granted, but his amended § 2241 petition does not set forth grounds entitling him to relief. Because Redmond is not entitled to relief from his disciplinary conviction, his § 2241 habeas petition

and amended § 2241 petition will be denied.

## IV. CONCLUSION

Accordingly, for the reasons discussed above, it is hereby ORDERED as follows:

1. The Clerk of the Court shall **LIST** "Jesse R. Redmond," as an alias designation for the Petitioner, Jesse R. Redmond, Jr.

2. The Clerk of the Court shall **TERMINATE** "Charles Samuels, Director of the BOP," and shall **SUBSTITUTE** USP-McCreary Warden J. C. Holland as the proper respondent to this proceeding.

3. Redmond's Motion to Amend [R. 9] (his § 2241 petition) is **GRANTED**, and the Clerk of the Court shall docket Record No. 9 as Redmond's Amended § 2241 Petition.

4. Redmond's 28 U.S.C. § 2241 petition for a writ of habeas corpus [R. 1] and his Amended § 2241 Petition [R. 9] are **DENIED**;

5. The Court will enter an appropriate judgment; and

6. This habeas proceeding is **DISMISSED** and **STRICKEN** from the Court's docket.

This 9th day of July, 2015.

**Signed By:**
***David L. Bunning*** DB
**United States District Judge**

G:\DATA\ORDERS\ProSe\Redmond 15-30 MOO denying 2241.wpd